**William Clyde COX; and Joyce Cox, Appellants,**

**v.**

**Honorable Paul BRADEN, Circuit Judge;**

**and**

**Freida Joan Loving (Real Party in Interest), Appellees.**

No. 2008–SC–000376–MR.

Supreme Court of Kentucky.

Oct. 23, 2008.

Larry E. Conley Corbin, KY, Counsel for Appellants.

Paul Braden, Whitley Circuit Court Judge, Corbin, KY, Appellee.

David Ora Smith, Marcia A. Smith, Corbin, KY, Counsel for Appellee, Freida Joan Loving.

Opinion of the Court by Justice NOBLE.

The Appellants appeal from a decision of the Court of Appeals denying a petition for a writ of mandamus directing the trial judge to set aside an order transferring a case between the two divisions of the Whitley Circuit Court and to assign cases in a random manner. Because Appellants have failed to demonstrate entitlement to the extraordinary writ, the Court of Appeals is affirmed.

## I. Background

Because this case involves a writ action, the record is all but non-existent, consisting only of the papers filed by the parties and one videotape of a short hearing. The facts described below therefore reflect at best a synthesis of the allegations contained in the briefs and what is apparent from the hearing and the court documents attached to the briefs.

The underlying case was originally filed in 2000 and was tried by Judge Jerry Winchester in Division I of the Whitley Circuit Court. On appeal, the judgment was reversed and remanded to the trial court, and the matter was again presided over by Judge Winchester. In August 2007, Judge Winchester retired from the circuit bench and entered the senior judge program, under which he was assigned back to Division I of the Whitley Circuit Court to hear its cases until selection of his successor in the ensuing election.

In early November 2007, Dan Ballou was elected to serve as circuit judge in Division I. He was sworn in as judge, and was called up for active duty with the military reserve. It is not clear whether he served briefly in his judicial position before being called up for active duty (as claimed by the real party in interest), or whether he immediately went on active duty and therefore never actually assumed his duties (as claimed by Appellants). Thus, depending on whose characterization is correct, Judge Winchester was either reassigned back to Division I as a senior judge after a short period of Judge Ballou's service, or he simply continued uninterrupted his previous senior judge service.

At some point, Judge Ballou requested that all cases involving David O. Smith, counsel for the real party in interest in this case, be transferred to Division II because of a conflict of interest. Apparently, the conflict was born out of a pending matter involving both Judge Ballou and Mr. Smith. Given the paucity of the record, it is not clear when Judge Ballou made his request: it may have occurred either before or after he was called up for active duty in the military.

In an order entered on November 18, the chief judge of the circuit, Paul Braden, granted Judge Ballou's request and ordered all of Mr. Smith's cases to be transferred to the other division of the Whitley Circuit Court (that being Judge Braden's division). The Appellants immediately moved to set aside Judge Braden's order, arguing that the transfer demonstrated favoritism to the other side. On December 10, Judge Braden heard the motion. (The

videotape in the record is of this hearing.) At the hearing, the judge indicated that he would recuse himself in order to diffuse any problem from his own potential conflict of interest if the parties felt his impartiality was in question. Appellant's attorney requested recusal, which Judge Braden granted and which left the Chief Regional Circuit Judge responsible for appointing a special judge to hear the case. (Judge Cletus Maricle was subsequently appointed to serve as special judge in the case.)

Rather than proceeding with the case, Appellants filed a petition for a writ of mandamus directing the trial court to set aside the transfer order, to reassign the transferred cases to Division I, and to insure that all cases filed in the 34th Judicial Circuit be assigned on a random basis in accordance with SCR 1.040.[1] The Court of Appeals denied the petition, holding that Appellants had not satisfied the requirements for entitlement to an extraordinary writ. In so holding, the court noted that Appellants had "provided no authority supporting the contention that SCR 1.040(4)(c) *required* [Judge Braden] to reassign J. Winchester to the case, when it has been shown that he no longer sits as a regular member of the Whitley circuit bench." The court also noted that even if it was persuaded of the merits of Appellants' argument, the requested relief would have been impossible because Judge Braden had disqualified himself from the underlying case.

Having lost before the Court of Appeals, Appellants exercised their matter of right appeal to this Court.

## II. Analysis

■ The writ of mandamus, like the writ of prohibition, is extraordinary in nature. Such a writ bypasses the regular appellate process and requires significant interference with the lower courts' administration of justice. The expedited nature of writ proceedings necessitates an abbreviated record. This magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants, if the process were not strictly scrutinized for appropriateness. As such, the specter of injustice always hovers over writ proceedings, which explains why courts of this Commonwealth are—and should be—loath to grant the extraordinary writs unless absolutely necessary. Because they fall outside the regular appellate process, especially when they are used as de facto interlocutory appeals (an increasing, undesired trend), writ petitions also consume valuable judicial resources, slow down the administration of justice (even when correctly entertained), and impose potentially unnecessary costs on litigants. *See Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky.1961) ("Relief by way of prohibition or mandamus is an extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief. This careful approach is necessary to prevent short-circuiting normal appeal procedure and to limit so far as possible interference with the proper and efficient operation of our circuit and other courts. If this avenue of relief were open to all who considered themselves aggrieved by an interlocutory court order, we would face an impossible burden of nonappellate matters.").

---

1. It must be noted that Appellants do not appear to have sought emergency relief under CR 76.36(4) before the Court of Appeals or this Court. Even if they have requested such relief, it has not been granted. As such, nothing except judicial discretion and deference is currently preventing the sitting special judge from proceeding with the underlying case, and if he has, such proceedings are appropriate and cannot be voided.

Thus, to say that writ petitions should be reserved for extraordinary cases and are therefore discouraged is an understatement. *See Buckley v. Wilson,* 177 S.W.3d 778, 780 (Ky.2005) ("Extraordinary writs are disfavored....").[2]

█ To maximize caution and to reduce the resources wasted on writ proceedings, the majority of which are unsuccessful, this Court has articulated a strict standard to determine whether the remedy of a writ is available. The standard delineates two distinct classes of writs, both of which Appellant claims are applicable:

A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky. 2004).

The first class of writs focuses on the lower court's authority to act in the case, or jurisdiction. Since the jurisdiction of each level of court is clearly established, either by the Constitution, statute, or rule, petitions alleging this ground are resolved by legal interpretation of the provisions granting jurisdiction.

The second class of writs applies where the lower court has jurisdiction but is alleged to be proceeding erroneously. Writs are available in such cases only where there is no remedy by appeal, and great injustice and irreparable injury is sure to result from the lower court proceeding. The test for the second class of writs is directly aimed at reducing the number of writ cases that proceed to the merits of the controversy. As this Court's predecessor noted, "This is a practical and convenient formula for determining, *prior to deciding the issue of alleged error,* if petitioner may avail himself of this remedy." *Bender,* 343 S.W.2d at 801; *see also Hoskins,* 150 S.W.3d at 18 ("In other words, only after determining that the prerequisites exist will the court decide whether an error

**2.** The authorities on this point are constant and approach legion. For a sampling, see *Independent Order of Foresters v. Chauvin,* 175 S.W.3d 610, 615 (Ky.2005) ("[W]rits ... are truly extraordinary in nature and are reserved exclusively for those situations where litigants will be subjected to substantial injustice if they are required to proceed."); *Foster v. Overstreet,* 905 S.W.2d 504, 505 (Ky.1995) ("Granting a writ of mandamus is a rare and extraordinary measure with a difficult standard to meet."); *Ohio River Contract Co. v. Gordon,* 170 Ky. 412, 186 S.W. 178, 181 (1916) ("[I]t is manifest that it was not intended by the lawmakers as a general principle, that this court, by the use of any extraordinary writs or processes, should interfere with the jurisdiction of the inferior courts, or with their discretion in the hearing or decision of questions of either law or fact, of which they have original jurisdiction, or with the course of justice in the inferior courts when it is

proceeding in the ordinary and usual way. Only in exceptional cases or where an unusual state of facts is presented, which makes it apparent that injurious consequences will result, against which there is no other adequate remedy, will the writ of prohibition be used, and then for the purpose most often of restoring the administration of justice to its accustomed channel, that its ordinary course may be insured.... [I]t has exercised its discretion to grant such a writ very sparingly, and then only as a matter of necessity to shield from injustice, against which there was no other adequate remedy and to preserve the orderly administration of the laws."); *Hager v. New South Brewing Co.,* 90 S.W. 608, 609 (Ky. 1906) ("The exigency must be extreme, the threatened danger practically certain, and the consequent irremedial injury equally imminent, before the writ should be so employed. It must be rare when the occasion can arise.").

occurred for which a writ should issue."). In this sense, the test is analogous to the prudential abstention doctrines employed by federal courts, at least in that it is aimed at reducing interference with other courts though the power to so interfere may technically exist. It is not prudent to decide issues on an abbreviated and unsubstantiated record, even though the writ process allows a petition in the door.

■ This second "class" of writs includes a very limited exception wherein the showing of great and irreparable harm "is not an absolute prerequisite" for the issuance of a writ (though the requirement of a lack of an adequate remedy by appeal remains). *Hoskins,* 150 S.W.3d at 10. The great and irreparable harm requirement may be put aside in "certain special cases ... [where] a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration. It may be observed that in such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury." *Bender,* 343 S.W.2d at 801. As this Court has noted, however, "these 'certain special cases' are exactly that—they are rare exceptions," *Grange Mut. Ins. Co. v. Trude,* 151 S.W.3d 803, 808 (Ky.2004), and are reserved for "exceptional cases [where] the remedy may be invoked as a 'shield from injustice ... to preserve the orderly administration of the laws.' " *Bender,* 343 S.W.2d at 801 (quoting *Ohio River Contract Co. v. Gordon,* 170 Ky. 412, 186 S.W. 178, 181 (1916)) (ellipsis in original).

■ Most importantly, however, whether to issue a writ is "always discretionary, even when the trial court was acting outside its jurisdiction." *Hoskins,* 150 S.W.3d at 9; *Bender,* 343 S.W.2d at 800 ("The exercise of this authority has no limits except our judicial discretion, and each case must stand on its own merits."); *Ohio River Contract Co.,* 186 S.W. at 181 ("The writ of prohibition [or mandamus] is not a writ which can be demanded as a matter of right and of course, but its granting or refusal is a matter which lies within the discretion of this court."). In other words, a writ is never mandatory, even upon satisfaction of one of the tests laid out in *Hoskins.*

■ Before analyzing the Appellants' claims, this Court finds it necessary to digress temporarily. Clearly, the forgoing discussion of the nature of and standards for writs may sound familiar, since a version of it is repeated in almost every writ decision by this Court. Ordinarily, a simple citation, such as the one to *Hoskins* that appears in the Court of Appeals decision in this case, should be enough. Yet unnecessary and ill-advised petitions for writs continue to be filed in large numbers—large enough that repetition is warranted.[3] This Court recognizes that attorneys are charged with representing their clients zealously, but it is also clear that the message in *Hoskins* about the extraordinary nature of writs is not getting through. So again: Remedy by way of extraordinary writ is disfavored, applications for such relief are discouraged, and the test articulated in *Hoskins* will be used to effectuate these preferences and to limit such writs to truly extraordinary cases.

This is not an extraordinary case.

---

**3.** A Westlaw search conducted in September 2008 reveals that since *Hoskins* was rendered in August 2004, this Court has issued opinions in approximately 74 cases resolving petitions for writs of mandamus or prohibition. Writs were granted in only 23 of those cases—less than one third—with the rest either being denied or dismissed.

The Appellants claim that Judge Braden acted outside his jurisdiction in transferring the underlying case to his division, thus entitling them to a writ under the "first class" in *Hoskins*. In the alternative, they claim entitlement to the writ under the "certain special cases" exception of the "second class."[4]

As to their main claim, Appellants argue Judge Braden had no jurisdiction to transfer the case because SCR 1.040(4)(a) requires random assignment of cases and because SCR 1.040(4)(c) requires "all matters connected with a pending or supplemental proceeding [to] be heard by the judge to whom the proceeding was originally assigned," absent good cause. The Appellants, however, do not claim that Judge Braden had no power to assign, reassign, or transfer their case (all of which the chief judge clearly has the power to do under SCR 1.040); rather, they claim that he violated the Supreme Court Rules in doing so, and therefore exceeded his mandate. This simply is not a claim about jurisdiction. The Appellants' attempt to fit it into the no-jurisdiction mold by recharacterizing it as an "abrogation" of a Supreme Court Rule is unconvincing. Instead, this is at best a claim that Judge Braden acted erroneously within his jurisdiction, which falls under the second class of writs set out in *Hoskins*.

The Appellants do argue in the alternative that they are entitled to the writ under this second class. However, rather than proceeding under the ordinary standard (that is, no remedy by appeal combined with great injustice and irreparable injury), they turn directly to the "certain special cases" exception by arguing that Judge Braden failed to comply with SCR 1.040(4)(a) and (c) and that his failure is an

injury to the orderly administration of justice.

The first problem with this claim is that in addition to requiring random assignment of cases and keeping them with the original judge whenever possible, SCR 1.040 also provides that the "chief judge shall ... [r]eassign cases from one judge to another as necessary or convenient" SCR 1.040(3)(d). Though the Appellants acknowledge that this rule exists, they do not address its applicability. Yet transfer of a case between divisions because of a conflict, which is likely what happened here, is exactly the sort of practice contemplated by SCR 1.040(3)(d). This is further supported by the General Assembly's grant of power under KRS 26A.040, which reads, "(1) Proceedings in any court having divisions shall be valid when prosecuted in any division thereof. (2) Any judge presiding over a division of a court mentioned in subsection (1) may hear and determine any case or question in any other division." Moreover, it is also not at all clear that SCR 1.040(4)(a) and SCR 1.040(4)(c) create rights that a litigant can enforce.

■ Secondly, the Appellants have misconstrued the general intent of SCR 1.040(4)(c). The primary purpose of requiring "all matters connected with a pending or supplemental proceeding" to be heard by the judge to whom the proceeding was originally assigned is to prevent splitting causes of action and forum shopping. The Rule's qualifying language— "[i]n the absence of good cause to the contrary"—indicates that returning the matter to the original judge is ultimately discretionary with the chief judge.

The Appellants also claim that the transfer of the case was improper because Judge Ballou was immediately called up

---

4. This description of these claims is generous, since Appellants did not even discuss the standard for writ petitions in their original brief, saving all such discussion for their reply brief.

for service, implying that he never sat as judge, and thus Judge Winchester simply continued to serve as senior judge on their case as previously assigned (and therefore should have remained on it). However, the Appellants have offered no proof of this allegation, either before the Court of Appeals or this Court. While the real party in interest has not offered counter-proof that Judge Ballou did assume his judicial mantle, the burden in a writ case falls on the party seeking the writ.

■ More importantly, this claim ignores that "[t]he court is an entity, not a person, and when one judge is replaced by another, whether the reason be death, disability, election or otherwise, the new judge is empowered to carry on the business of the court to the same extent as his predecessor, had he remained on the bench." *Herring v. Moore,* 561 S.W.2d 95, 98 (Ky.App.1977). Judge Winchester retired, taking senior status. There is no question that Judge Ballou was subsequently elected and sworn in as the judge of Division I of the Whitley Circuit Court. At that time, the underlying case became his. He then recused from the case by asking Chief Judge Braden to transfer it from Division I. Judge Braden being the only other Whitley Circuit Judge, perforce the case went to his division. When he also recused, the case remained in his division, but a special judge was appointed by the Chief Regional Judge to hear it.

With both of the regular Whitley Circuit Judges recused, the Chief Regional Judge had discretion to appoint any appropriate judge, but the case nevertheless remained a Whitley Circuit Court case. Senior

Judge Winchester then had no claim to the case, since senior judge assignments are made by the Chief Justice of the Supreme Court pursuant to KRS 21.580. Proper procedure was followed in this case, and the Appellants had no entitlement by rule or otherwise to have Judge Winchester reappointed to the case.

■ There is no reason then for this Court to view Judge Ballou's request that the cases involving Mr. Smith be transferred out of his division or Judge Braden's compliance with that request as improper or a usurpation of some authority that properly belonged to Senior Judge Winchester. Moreover, while Appellants are correct that a properly assigned special judge has "all the powers and responsibilities of a regular judge of the court," KRS 26A.020, their argument ignores the fact that Judge Winchester simply was no longer assigned to their case and that those powers and responsibilities are always secondary to those of the regular judge and can only ever come into play when the regular judge is unable to hear the case.[5]

■ The Appellants have not satisfied the requirements of the certain special cases exception. While the practice engaged in by Judges Ballou and Braden may have been less formal than in many other jurisdictions, it was not inappropriate, and it certainly was not such a departure from standard procedure as to do violence to the administration of justice itself. The underlying case has now been assigned to a special judge; there is no

5. The Appellants cite a portion of *Brutley v. Commonwealth,* 967 S.W.2d 20, 23 (Ky.1998), that discussed the limits on the chief judge's power to supervise administrative matters in support of their proposition. It is not necessary to reach the issue addressed in that case

to resolve their claim, but it is worth noting that the section of *Brutley* upon which they rely was not the basis of the Court's holding, since two of the five justices concurring in the judgment did not join that section's reasoning.

reason to think he will not hear the case fairly and in due course.[6]

For the foregoing reasons, the decision of the Court of Appeals to deny the petition for a writ of mandamus is affirmed.

ABRAMSON, CUNNINGHAM, SCHRODER, SCOTT and VENTERS, JJ., concur. MINTON, C.J., concurs in result only.

---

6. Given the resolution of this case, the claim of the real party in interest that this issue is moot because Judge Braden has recused from the matter need not be addressed. However, it is worth noting that Judge Braden only recused from hearing the underlying case, not from his responsibilities as chief judge. It is also unclear whether the rule in *Detroy v.*

*Ropke,* 447 S.W.2d 105, 106 (Ky.1969), which held that a writ-style action was rendered moot by the death of the circuit judge, would control the outcome of such an issue (since death is a different than other judicial "disabilities") or is still good law in light of the subsequent enactment of the Judicial Article and the current practice.