COMMONWEALTH of Kentucky,
ENERGY AND ENVIRONMENT
CABINET, Appellant,

v.

Honorable Phillip J. SHEPHERD,
Judge, Franklin Circuit Court; Frasure Creek Mining, LLC; ICG Hazard,
LLC; ICG Knott County, LLC; ICG
East Kentucky, LLC; and Powell
Mountain Energy, LLC, Appellees,

and

Appalachian Voices, Inc., et al.,
Real Parties In Interest,

and

Frasure Creek Mining, LLC, Appellant,

v.

Honorable Phillip J. Shepherd, Judge,
Franklin Circuit Court; Commonwealth of Kentucky, Energy And Environment Cabinet; ICG Hazard,
LLC; ICG Knott County, LLC; ICG
East Kentucky, LLC; and Powell
Mountain Energy, LLC, Appellees,

and

Appalachian Voices, Inc., et al.,
Real Parties In Interest.

Nos. 2011–SC–000482–MR,
2011–SC–000485–MR.

Supreme Court of Kentucky.

April 26, 2012.

Mary Alma Stephens, John G. Home, II, Joshua Wayne Nacey, Energy and Environmental Cabinet, Environmental Protection Legal Division, Frankfort, KY, Counsel for Appellant/Appellee Commonwealth Of Kentucky Energy And Environment Cabinet.

Phillip James Shepherd Judge, Frankfort, KY, Counsel for Appellee.

Anne Adams Chesnut, John Clarence Bender, Richard Clayton Larkin, Greenebaum, Doll & McDonald, PLLC, Lexington, KY, Counsel for Appellant/Appellee Frasure Creek Mining, LLC.

Kevin Michael McGuire, Laura Patterson Hoffman, Jackson Kelly, PLLC, Lexington, KY, Counsel for Appellees ICG Hazard, LLC, ICG Knott County, LLC, ICG East Kentucky, LLC, and Powell Mountain Energy, LLC.

Mary Varson Cromer, Appalachians Citizens' Law Center, Whitesburg, KY, Lauren H. Waterworth, Waterworth Law Office, PLLC, Boone, NC, Counsel for Real Parties In Interest Appalachian Voices, Inc., Waterkeeper Alliance, Inc., Kentuckians For The Commonwealth, Inc., Kentucky Riverkeeper, Inc., Pat Banks, Lanny Evans, Thomas H. Bonn, and Winston Merrill Combs.

Opinion of the Court by Justice ABRAMSON.

The Commonwealth of Kentucky's Energy and Environment Cabinet and Frasure Creek Mining, LLC, appeal from a July 19, 2011 Order of the Court of Appeals denying their separate but consolidated petitions for writs of mandamus and prohibition against Franklin Circuit Court Judge Phillip J. Shepherd. The Cabinet and Frasure Creek are before Judge

Shepherd in an enforcement action under Kentucky's analog of the federal Clean Water Act, and as a resolution of that action they have jointly moved the trial court to enter a consent judgment which they have negotiated. They object to the trial court's decision to allow the real parties in interest—Appalachian Voices, Inc.; Kentuckians For The Commonwealth, Inc.; Kentucky Riverkeeper, Inc.; Waterkeeper Alliance, Inc.; Tom Bonny; Winston Merrill Combs; Pat Banks; and Lanny Evans (collectively the "Citizen Plaintiffs")—to intervene in the Cabinet's action, and so they petitioned the Court of Appeals for writs forbidding the intervention and compelling entry of the consent judgment. Because we agree with the Court of Appeals that the trial court is proceeding within its jurisdiction and that the Cabinet and Frasure Creek have an adequate remedy by appeal for the errors they allege, we affirm the Court of Appeals' denial of extraordinary relief.

### RELEVANT FACTS

Although as usual the record is sparse in this appeal from original actions in the Court of Appeals, it appears that Frasure Creek owns and operates coal mines, primarily in Pike County, Kentucky. In the course of its operations it discharges pollutants into one or more of the Kentucky, Big Sandy, and Licking Rivers, and their tributaries. The discharges are regulated pursuant to a National Pollutant Discharge Elimination System ("NPDES") permit issued by the Cabinet.

On October 7, 2010, the Citizen Plaintiffs gave notice of their intent to sue Frasure Creek and another coal mining company pursuant to the citizen suit provision in section 505 of the federal Water Pollution Control Act Amendments of 1972, commonly known as the Clean Water Act. 33 U.S.C. § 1251 *et seq.* Section 402 of the

Clean Water Act, 33 U.S.C. § 1342, provides for the issuance, by the Administrator of the Environmental Protection Agency (EPA) or by EPA authorized states—Kentucky among them—of NPDES permits. Such permits allow for, but impose limits on, the discharge of pollutants into the navigable waters of the United States. They also establish related monitoring and reporting requirements. Noncompliance with a permit constitutes a violation of the Clean Water Act. 33 U.S.C. § 1342(h).

Under § 505(a) of the Clean Water Act, a suit to enforce any limitation in an NPDES permit may be brought by any "citizen," defined as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. §§ 1365(a), (g). Sixty days before initiating a citizen suit, however, the would-be plaintiff must give notice of the, alleged violation to the EPA, to the State in which the alleged violation occurred, and to the alleged violator. 33 U.S.C. § 1365(b)(1)(A). It was this sixty-day notice of intent to sue (NOI) that the Citizen Plaintiffs issued on October 7, 2010. The purpose of the notice is at least twofold: to give the alleged violator a chance to bring itself into compliance and thus to render the citizen suit unnecessary, *Friends of the Earth, Incorporated v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987)), and to give the EPA or the affected State a chance to initiate an enforcement action, which, as long as it is "diligently prosecuted," will preclude commencement of the citizen suit. 33 U.S.C. § 1365(b)(1)(B).

At the very close of the sixty-day notice period in this case, on December 3, 2010, the Cabinet brought the instant enforcement action against Frasure Creek and

thus invoked the statutory bar to the Citizen Plaintiffs' suit. Together with its complaint, the Cabinet filed the proposed consent judgment, and one week later, on December 10, 2010, the Cabinet and Frasure Creek filed a joint motion to have the consent judgment entered. With that motion pending, on December 14, 2010 the Citizen Plaintiffs moved to intervene, attaching a proposed intervening complaint. Both the Cabinet and Frasure Creek opposed the intervention. On February 11, 2011, after the parties had briefed and argued the issue, the trial court issued a carefully circumscribed order granting intervention to allow the Citizen Plaintiffs an opportunity to voice their objections to the proposed consent judgment, but holding in abeyance any consideration of the Citizen Plaintiffs' own purported claims under the Clean Water Act. It was that order granting intervention that prompted the Cabinet and Frasure Creek's quest for extraordinary relief. They maintain, as they did before the Court of Appeals, that the trial court's intervention order runs counter both to jurisdictional limits imposed by Congress and to state law rules and standards for granting intervention and approving consent judgments. We begin our analysis of these contentions by restating the high hurdle an applicant for extraordinary relief must clear.

## ANALYSIS

In *Cox v. Braden*, 266 S.W.3d 792 (Ky.2008), we emphasized that to prevent the disruption of trial court proceedings and the waste of appellate court resources occasioned by interlocutory appeals, extraordinary relief under Kentucky Rule of Civil Procedure (CR) 81 in the form of writs compelling or prohibiting some act by the trial court is limited to two narrow circumstances. Such relief may be granted, we reiterated, only

upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Id.* at 796 (quoting *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky.2004)). There is a limited exception to the second class of writs where the court is acting within its jurisdiction but erroneously, *i.e.*, if there is no adequate remedy by appeal, the showing of great and irreparable harm can be dispensed with if the case involves "a substantial miscarriage of justice" and "correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Cox*, 266 S.W.3d at 797 (quoting *Hoskins v. Maricle*, 150 S.W.3d at 10). As for this Court's role on direct appeal from the Court of Appeals in a writ case, we review the Court of Appeals' legal rulings *de novo*, its factual findings for clear error, and ultimately its decision to grant or deny extraordinary relief for abuse of discretion. *Grange Mutual Insurance Company v. Trude*, 151 S.W.3d 803 (Ky.2004).

### I. The Trial Court is Proceeding Within its Jurisdiction.

In the first type of writ case referred to above, the "jurisdiction" at issue is the trial court's subject matter jurisdiction, *i.e.*, its authority to address the matter or the question before it. *Goldstein v. Feeley*, 299 S.W.3d 549 (Ky.2009). The Cabinet and Frasure Creek contend that the federal courts have exclusive subject matter jurisdiction over citizen suits under the Clean Water Act and thus by allowing the Citizen Plaintiffs to intervene in this

state—court proceeding, the trial court is purporting to exercise a subject matter jurisdiction that federal law preempts. As the parties note, the federal Circuit Courts of Appeal which have addressed the question of federal preemption—usually in the context of the Resource Conservation and Recovery Act (RCRA), the citizen suit provisions of which are similar to those of the Clean Water Act—have split, the First, Third, Seventh, and Eighth Circuits having held or indicated that federal jurisdiction over citizen suits is exclusive, the Sixth Circuit having held that it is not. *Baykeeper v. NL Industries, Inc.,* 660 F.3d 686 (3rd Cir.2011); *Adkins v. VIM Recycling, Inc.,* 644 F.3d 483 (7th Cir.2011); *Chico Service Station, Inc. v. Sol Puerto Rico Limited,* 633 F.3d 20 (1st Cir.2011); *Davis v. Sun Oil Company,* 148 F.3d 606 (6th Cir.1998); *Blue Legs v. U.S. Bureau of Indian Affairs,* 867 F.2d 1094 (8th Cir. 1989).

■ At this point, however, we need not weigh in on this question, for as noted the trial court's order limited the Citizen Plaintiffs' intervention, initially at least, to commenting upon and raising objections to the proposed consent judgment. The trial court has held in abeyance the Citizen Plaintiffs' own claims under the Clean Water Act. Even if the state court's jurisdiction to hear and decide those independent claims has been preempted by federal law, we are persuaded that the limited intervention the trial court has thus far allowed for purposes of citizen comment and objection is not so preempted. As we noted above, 33 U.S.C. 1365(b)(1)(B) bars a citizen suit if within the sixty-day notice period the affected State commences a compliance action, "in a court of the United States, or a State," and diligently prosecutes it. The statute continues by providing that "in any such action in a court of the United States any citizen may inter-

vene as a matter of right." *Id.* Congress thus clearly distinguished between a citizen's suit on his or her own behalf, a suit that is barred by a diligently prosecuted governmental enforcement action, and the same citizen's intervention in the federal court enforcement action, where he or she is accorded an opportunity to be heard.

If the enforcement action is in state court, the EPA's regulations similarly require that

[a]ny State administering a program shall provide for public participation in the State enforcement process by providing either:

(1) Authority which allows intervention as of right in any civil or administrative action to obtain [specified remedies] by any citizen having an interest which is or may be adversely affected; or

(2) Assurance that the State agency or enforcement authority will:

(i) Investigate and provide written responses to all citizen complaints submitted pursuant to [specified] procedures;

(ii) Not oppose intervention by any citizen when permissive intervention may be authorized by statute, rule, or regulation; and

(iii) Publish notice of and provide at least 30 days for public comment on any proposed settlement of a State enforcement action.

40 C.F.R. 123.27(d). Clearly the regulations contemplate citizen intervention in an agency's state-court enforcement action, such as this one, and to that extent these regulations would be meaningless if such intervention were preempted. It is conceivable, of course, that the EPA has misconstrued Congress's jurisdictional intent, but considerable weight is to be accorded the EPA's construction, *Chevron U.S.A. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and nothing the Cabinet and Frasure Creek have argued sug-

gests an EPA misreading of the Act. This is particularly so in light of Congress's express declaration that public participation in efforts to control water pollution is a priority of the Clean Water Act:

> Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan, or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States. The Administrator, in cooperation with the States, shall develop and publish regulations specifying minimum guidelines for public participation in such processes.

33 U.S.C. 1251(e). Federal courts, too, far from deeming citizen intervention in state-court enforcement proceedings a trespass upon an exclusively federal jurisdiction, have indicated instead that an interested citizen's not being permitted to so intervene can be a factor casting doubt upon the "diligence" of the state's enforcement efforts. *See, e.g., Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency*, 859 F.2d 156 (D.C.Cir. 1988); *Frilling v. Village of Anna*, 924 F.Supp. 821 (S.D.Ohio 1996); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 890 F.Supp. 470 (D.S.C.1995).

The named individual plaintiffs in the underlying case are Kentucky residents who allege they regularly use and enjoy the Kentucky River and its tributaries. Members of Appalachian Voices, Inc., a non-profit environmental organization, allegedly include individuals who reside near or use water downstream from Frasure Creek's discharge into the Kentucky and Big Sandy Rivers and their tributaries in Pike, Perry, Floyd and Knott Counties.

Waterkeeper Alliance Inc. claims members who reside near or use waters directly downstream from the discharges into the Kentucky, Big Sandy and Licking Rivers. The other non-profit organizations, Kentucky Riverkeeper, Inc., and Kentuckians for the Commonwealth, also claim as members numerous Eastern Kentucky residents who reside near and use the waters at issue. Judge Shepherd found that the Citizen Plaintiffs not only had an interest in the subject matter of the enforcement action but that they had brought the violations to the Cabinet's attention "through their own efforts."[1]

We conclude, therefore, that to the extent the Franklin Circuit Court has permitted the Citizen Plaintiffs to intervene in the Cabinet's enforcement action so as to give them an opportunity to comment upon and to criticize the proposed consent judgment, it is not acting outside its jurisdiction. Because the trial court has thus far held the Citizen Plaintiffs' own claims in abeyance, we need not at this time address whether it likewise has jurisdiction to entertain those claims under the Clean Water Act. For the same reason, we decline to address at this point the Cabinet's contention that allowing the Citizen Plaintiffs' own claims would contravene the General Assembly's purported intent to disallow them.

## II. The Cabinet And Frasure Creek Have An Adequate Remedy By Appeal.

Because the trial court is acting within its jurisdiction, the Cabinet and Frasure Creek are generally not entitled to extraordinary relief unless the court is proceeding erroneously, they could not obtain an adequate remedy by appeal, and the

---

1. Apparently, Appalachian Voices served an Open Records request on the Cabinet and found the violations through review of the Cabinet's own records.

denial of relief would result in great injustice or irreparable injury. *Cox v. Braden, supra.* In particular, where the court is not acting outside its jurisdiction, "a showing of no adequate remedy by appeal is 'an absolute prerequisite' to obtaining a writ for extraordinary relief." *Estate of Cline v. Weddle,* 250 S.W.3d 330, 335 (Ky.2008) (quoting from *The Independent Order of Foresters v. Chauvin,* 175 S.W.3d 610 (Ky. 2005)). If there is an adequate remedy by appeal, the "special case" exception which dispenses with the showing of great and irreparable harm and allows issuance of a writ to protect the "orderly administration of justice," *Cox,* 266 S.W.3d at 796–97, is not applicable for a very obvious reason—the availability of an appeal adequately serves the interest of orderly judicial administration.

◼ Here, the Cabinet and Frasure Creek maintain that the trial court has erred in a couple of ways. First, they accuse the court of misapplying CR 24.03, which requires a person seeking to intervene as of right to serve a motion and an accompanying pleading upon the parties already in the case. The Citizen Plaintiffs' pleading does not satisfy the rule, according to the Cabinet and Frasure Creek, and thus the intervention is procedurally improper. The Cabinet and Frasure Creek also maintain that by allowing the intervention the trial court has implicitly adopted an inappropriate standard for reviewing and approving their proposed consent judgment.

Are these alleged errors subject to remedy by appeal? We believe they are. Our own precedent does not seem to have addressed the precise procedural issue, but our predecessor court characterized an order allowing intervention as "interlocutory." *Webster v. Board of Education of Walton–Verona Independent School District,* 437 S.W.2d 956, 957 (Ky.1969). This is consistent with the general rule elsewhere, a sound one we believe, to the effect that an order granting intervention (unlike an order denying it *Ashland Public Library Board of Trustees v. Scott,* 610 S.W.2d 895 (Ky.1981)) is not subject to immediate review but is to be addressed in the appeal from the final judgment. See generally E.H. Schopler, *Appealability of Order Granting or Denying Right of Intervention,* 15 A.L.R.2d 336 (1951–2012). Merely adding a party to the suit, after all, generally at least, will not deprive any other party of the ability to assert and vindicate his or her rights in the ordinary course of trial and appeal.

Similarly, whether the trial court must find before entering it that the consent judgment is fair, adequate, reasonable, and consistent with the public interest—the standard typically employed by the federal courts when asked to enter environmental consent decrees, *see, e.g., United States v. Lexington–Fayette Urban County Government,* 591 F.3d 484 (6th Cir.2010), and the standard the Cabinet and Frasure Creek themselves invoked within their proposed consent judgment—or whether some other standard is the appropriate one under Kentucky law, are questions best left to the trial court in the first instance. If and when the trial court applies the wrong standard and does so to the detriment of the Cabinet and Frasure Creek, they can have the error corrected on appeal and they will be out no more than the costs of litigation, which, as the Court of Appeals correctly noted and as we have many times held, does not render the remedy by appeal inadequate. *Sunbeam Corporation v. Dortch,* 313 S.W.3d 114 (Ky.2010) (citing *Estate of Cline, supra* ).

Against this conclusion, the Cabinet and Frasure Creek insist that more is at stake here than the ordinary costs of litigation. Relying on *North Fork Collieries, LLC v.*

*Hall*, 322 S.W.3d 98 (Ky.2010), they maintain that the Citizen Plaintiffs' intervention deprives them of their bargained-for right "not to be forced into litigation." In *North Fork*, one party to an arbitration agreement brought suit against the other party, and the defending party moved the trial court to stay the suit and to refer the matter to an arbitrator. When the trial court refused, the defending party sought interlocutory relief pursuant to CR 65. Granting that relief, we explained that in those circumstances an appeal would not be an adequate remedy, because the allegedly breached bargain to arbitrate instead of litigating could not be vindicated after the litigation had occurred. The Cabinet and Frasure Creek contend that they, similarly, are losing the benefit of their agreement to settle rather than to litigate the Cabinet's enforcement action, a benefit that an appeal cannot restore. This reliance on *North Fork* is misplaced.

*North Fork* concerned an arbitration contract signed by and binding on the plaintiff in a lawsuit, a plaintiff who had ignored his agreement not to sue. Here, however, even assuming that the yet-to-be entered consent judgment constitutes a binding agreement between the Cabinet and Frasure Creek, it obviously does not bind the Citizen Plaintiffs, who are not parties to it. The Cabinet and Frasure Creek could and apparently did agree not to litigate against each other; they could not "agree," however, not to be proceeded against by third parties. This case is thus unlike *North Fork*, which hinged on the fact that by bringing suit the plaintiff allegedly breached the arbitration agreement to which he was a party, a breach that could not be remedied if the litigation were allowed to go forward. Since the Citizen Plaintiffs are strangers to the Cabinet and Frasure Creek's agreement, their intervention cannot be a breach of that agreement and does not threaten to de-

prive either the Cabinet or Frasure Creek of any benefit within its contemplation. Nor does the Citizen Plaintiffs' intervention "force" the Cabinet and Frasure Creek into unwanted-litigation with each other. They remain free to stand by their settlement.

Finally, the Cabinet and Frasure Creek suggest that broader public-policy concerns give them interests that cannot be vindicated by an ordinary appeal. The Cabinet complains that the Citizen Plaintiffs' intervention interferes with its right to settle disputes through negotiation and compromise. Frasure Creek speculates that subjecting proposed settlements to a citizen plaintiffs critique will eliminate a regulated entity's incentive to settle. These are valid concerns, of course, but allowing the litigation to proceed in the normal course does not undermine them. If the Citizen Plaintiffs' intervention is contrary to state law, as the Cabinet and Frasure Creek assert, and results in the rejection of the proposed consent judgment, the ordinary remedy of an appeal, after the development of a full record, will fully vindicate those asserted policy interests. Thus, whether the consent judgment is accepted—in which case the Cabinet's and Frasure Creek's interests in the settlement will not have been interfered with—or rejected—in which case an appeal will be available—the only loss to them will be the cost of the litigation, and that loss, as noted, does not make an appeal after finality an inadequate remedy.

## CONCLUSION

In sum, the trial court's ordinary authority to permit sufficiently interested parties to intervene in a suit properly before it has not been preempted here, at least not completely, by federal law. On the contrary, federal law encourages the states to permit interested citizens to intervene and be

heard in state court enforcement proceedings under the state analogs of the federal environmental protection statutes. To the extent, therefore, that the trial court has allowed the Citizen Plaintiffs to intervene in the Cabinet's enforcement action so as to accord them an opportunity to challenge the proposed consent judgment, it has not trespassed upon the federal courts' exclusive jurisdiction. Whether the trial court would likewise have jurisdiction to entertain the Citizen Plaintiffs' own claims under the Clean Water Act is a much harder question, but one we need not address at this time since the trial court has not of yet and may not ever assert that jurisdiction. Because the trial court has jurisdiction to permit the Citizen Plaintiffs a limited intervention, and because the propriety of that intervention under Kentucky law can be challenged and assessed in the ordinary course of trial and appeal, the Court of Appeals correctly denied the Cabinet's and Frasure Creek's petitions for extraordinary relief. Accordingly, we hereby affirm, the Court of Appeals' Order in these consolidated cases.

All sitting. All concur.