RENDERED: OCTOBER 25, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1233-MR

COMMONWEALTH OF KENTUCKY,
EX REL. MICHAEL O'CONNELL, IN
HIS OFFICIAL CAPACITY AS
JEFFERSON COUNTY ATTORNEY                                          APPELLANT


                APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE MELISSA L. BELLOWS, JUDGE
                ACTION NO. 23-CI-003872


STEPHANIE PEARCE BURKE,
IN HER OFFICIAL CAPACITY
AS JUDGE OF THE JEFFERSON
DISTRICT COURT, AND
EDWARD FARMER                                                     APPELLEES

### OPINION
### AFFIRMING
** ** ** ** **

BEFORE: CETRULO, L. JONES, AND McNEILL, JUDGES.

CETRULO, JUDGE: The Commonwealth appeals a Jefferson Circuit Court order

denying its petition for a writ of prohibition and mandamus. Following a review of

the record, law, and issues, we affirm.

# BACKGROUND

In early September 2022, Edward Farmer ("Farmer") was arrested and charged with both misdemeanor and felony offenses. On September 15, Farmer's legal counsel moved for a competency evaluation under Kentucky Revised Statute ("KRS") 504.080, and the district court granted the motion. In October 2022, Dr. Megan Green ("Dr. Green") of the Kentucky Correctional Psychiatric Center ("KCPC") submitted her evaluation of Farmer. Dr. Green determined that due to mental illness, Farmer "lack[ed] the capacity to appreciate the nature and consequences of the proceedings against him and that he lack[ed] the capacity to participate rationally in his own defense." Dr. Green recommended Farmer be admitted to KCPC for inpatient psychiatric treatment.

On December 12, 2022, the district court held a competency hearing. As a preliminary matter, the prosecutor stated that – based on Dr. Green's report – the parties agreed Farmer was incompetent at that time and he wanted to focus the hearing on the likelihood of Farmer regaining competency in the foreseeable future. At that hearing, Dr. Green testified there was a substantial probability that Farmer would regain his competency in the foreseeable future. Ultimately, the district court found Farmer incompetent to stand trial, entered an order under KRS 504.110 for treatment up to 60 days at KCPC, and continued his case for a status hearing in February ("December 2022 Treatment Order").

On February 8, 2023, the district court held a status hearing. As of that day, Farmer remained in jail and KCPC had not yet admitted him for treatment. The court continued his case. On March 15, 2023, the district court held another status hearing. As of that day, Farmer remained in jail and KCPC had not yet admitted him for treatment. The court granted Farmer's request to be placed on home incarceration at a treatment facility operated by Seven Counties Services ("Seven Counties"), a mental health and substance abuse treatment center. The court continued his case.

On May 22, 2023, the district court held another status hearing. As of that day, Farmer had spent 69 days at Seven Counties, and KCPC had not yet admitted him for treatment. Farmer requested release on his own recognizance or that the court permit Seven Counties to conduct the court-ordered treatment under KRS 504.110. The Commonwealth objected, and the court continued the matter to the next day. The next day, Judge Stephanie Pearce Burke ("Judge Burke" and/or the "district court") – in her official capacity as Judge of the Jefferson District Court and the named appellee herein – orally found Farmer incompetent to stand trial, released him on his own recognizance, held his cases in abeyance, and scheduled the matter for a status hearing in July 2023.

On June 23, 2023, the Commonwealth petitioned the Jefferson Circuit Court to issue a combined writ of prohibition and mandamus. The Commonwealth

requested that the circuit court require the district court to strictly follow the procedures outlined in KRS 504.110(1) and to interpret that statute's "foreseeable future" verbiage consistent with KRS 504.060(3). The Commonwealth contended that KRS 504.060 provides the definitions for the chapter and defines "foreseeable future" as "not more than three hundred sixty (360) days[.]" KRS 504.060(4). KRS 504.110(1) gives the court direction on what to do if a defendant is found incompetent to stand trial but "there is a substantial probability the defendant will attain competency in the *foreseeable future*[.]" (Emphasis added.) In those instances, the statute instructs the court to commit the defendant to a treatment facility for 60 days or until competency is reached, whichever is first. KRS 504.110(1). After that, the court should hold another hearing within 10 days to determine if he/she is competent.

Here, the district court determined that the government did not conduct the court-ordered 60-day treatment within a reasonable time, but the Commonwealth argued the court's "reasonable time" determination was arbitrary and the court should allow up to 360 days, *i.e.*, the "foreseeable future" as defined by KRS 504.060(4), for the government to conduct that treatment. In essence, the Commonwealth believed the district court should allow up to 360 days from the December 2022 Treatment Order for the government to conduct the court-ordered

treatment. Thus, the Commonwealth, in its writ, requested that the circuit court forbid the district court from halting the prosecution of Farmer.

On September 19, 2023, the Jefferson Circuit Court denied the writ ("2023 Denial Order") because the Commonwealth did not establish a "truly extraordinary case," or "great injustice or irreparable injury" warranting the "very limited" relief of a writ. The circuit court determined that, while Judge Burke did not strictly follow KRS 504.110, she nonetheless acted within her discretion in determining Farmer's competency (or lack thereof) to proceed to trial. The circuit court held that Farmer's due process rights outweighed the Commonwealth's interpretation of the timing required by KRS 504.110. The circuit court also determined that a writ was not appropriate under these circumstances because it had another avenue for relief. The circuit court stated, "if the defendant is found to be incompetent, the [district court] shall conduct an involuntary hospitalization. At that time, a final order will be entered, affording the Commonwealth the opportunity to appeal the judgment." The Commonwealth appealed this 2023 Denial Order.

**RECORD & PRESERVATION**

When the Commonwealth requested a writ from the circuit court, it did not instruct the clerk to make a copy of the district court proceedings, but rather, the Commonwealth intended to copy the district court proceedings into a

disc and tender that disc as Exhibit 17 with its petition. The Commonwealth described Exhibit 17 as a "CD Containing Cited Video Record" and all parties agree as to the disc's intended contents. However, the Exhibit 17 disc that the Commonwealth tendered was blank. It was not until the week of January 8, 2024 – *after* the Commonwealth designated the record for appeal to this Court – that it realized its error.

Kentucky Rule of Appellate Procedure ("RAP") 24(A) details what constitutes the record on appeal including the entire written record, exhibits that can be easily enclosed in legal-sized envelopes, and official electronic recordings. RAP 24(B) places the burden on the appellant to timely designate the record on appeal. Here, the Commonwealth timely designated, pursuant to RAP 24, the entire paper record "including the Exhibits filed with the Commonwealth's Petition and Memorandum in Support of Writ of Prohibition and Mandamus. Those exhibits specifically include a CD containing the district court video record cited in the Commonwealth's Petition." Shortly thereafter, the Commonwealth discovered its error – in submitting a blank disc – and moved to supplement the record.

The parties thereafter filed numerous overlapping and conflating pleadings before this Court and the circuit court.[1] Now, the Commonwealth argues

---

[1] On January 17, 2024, the Commonwealth filed a motion with the Jefferson Circuit Court to supplement the record with a new disc. Farmer objected. On January 24, the circuit court granted the Commonwealth's motion to supplement the record. However, approximately 2

it should be permitted to supplement the record, but Farmer disagrees. Farmer argues that because the Exhibit 17 disc was blank, the district court proceedings were not before the circuit court when it reached its decision, and therefore those proceedings are outside the record on appeal. However, contrary to Farmer's argument, the district court hearings are not "new" to the record on appeal. In fact, the Commonwealth (in its petition for a writ), Farmer (in his response to the petition for a writ), and the circuit court (in the order denying the writ) all referenced the district court proceedings. It is unclear if the circuit court attained its own copy of the district court proceedings or merely relied on the uncontested recitation of those proceedings by the parties; however, as there are only oral findings and no written findings by the district court, the circuit court clearly relied upon the district court proceedings, in some form, in its order. The 2023 Denial Order, in relevant part, stated:

> At the December 12, 2022 competency hearing, Dr. Green testified that there was a substantial probability that Farmer would regain his competency in the foreseeable future.
>
> . . .

weeks later, on February 8, the Jefferson Circuit Court changed course and denied the Commonwealth's motion to supplement the record. On February 1, Farmer filed a motion to strike the supplemental record with this Court, and later, Farmer filed a motion to cite the February 8 circuit court order. On May 20, this Court denied Farmer's motion to strike the supplemental record, providing that this panel retains authority to review that decision but granted Farmer's motion for leave to cite the February 8 circuit court order.

At or near after the May 22 hearing, Judge Burke declared that, as Farmer had still not received his treatment, along with several other issues, Farmer was declared incompetent to stand trial and released on his own [recognizance] and ordered to treatment at Seven Counties, on May 22, 2023.

. . .

[Judge] Burke was mindful that Farmer's cases were being held in abeyance during this period, and thusly, delaying Farmer's right to a speedy trial.

. . .

[Judge] Burke found that Farmer had been in custody under psychiatric care for too long, with no reports of progress or the like whatsoever. [Judge Burke] reviewed Dr. Green's report that Farmer *may* regain competency within a reasonable amount of time, along with Farmer's behavior in Court, and [Judge] Burke deemed that he was incompetent to stand trial as it was simply taking too long for KCPC to aid in his regaining of competency. [Judge] Burke's ruling ultimately indicated that holding a defendant for up to 360 days, per the statute, and waiting for KCPC to administer the 60 days testing, was simply too long a period of time, and she ruled him incompetent.

Thus, even though its format source is unclear (video or pleadings), the circuit court clearly relied upon the district court proceedings for its findings and conclusions within the 2023 Denial Order.

Farmer argues that *Lucas v. Lucas*, 720 S.W.2d 352 (Ky. App. 1986), supports its contention that the district court hearings are outside the record on appeal, but we do not agree. In *Lucas*, a party filed seven depositions with the

circuit court prior to a four-day bench trial, but none of those depositions were introduced into evidence during the trial. *Id.* at 353. The *Lucas* Court determined that, contrary to the appellant's request, the depositions could not be included within the record on appeal because an appellate court is not permitted to review evidence that was available but not presented to the trier of fact. *Id.* However, those facts are distinguishable from the facts before us.

Here, the Commonwealth – at all times – intended to include the district court hearings in the record. In fact, the Commonwealth, Farmer, and the circuit court all referenced those hearings and the findings made within those hearings. The Commonwealth referenced the Exhibit 17 disc and its contents more than 25 times in its petition for a writ of mandamus and prohibition. In Farmer's response to the petition, he too cites to the Commonwealth's Exhibit 17 (and/or the video recordings of the district court proceedings) at least twice, and the circuit court relays both the factual events and the legal conclusions from those hearings in its 2023 Denial Order. As there appears to be no written order repeating the district court's findings from the May 23 hearing, the video recordings are the root and source of all facts argued before the circuit court and this Court. Unlike *Lucas*, the appellant here, the Commonwealth, is not introducing a *new* argument and facts on appeal, but instead is referencing video recordings that all parties seem to accept as containing *the* issue on appeal.

-9-

Also, unlike *Lucas*, we have new rules of appellate procedure[2] to guide us under these circumstances. RAP 25, effective as of January 1, 2023, gives us guidance for correcting errors. RAP 25(C) states that "[i]f material properly designated by a party is omitted from the record by error or accident, the party may notify the circuit clerk who shall file a supplemental certification and transmit that omitted portion of the record to the appellate court without further order of that court." This rule does not limit correctable errors to only those mistakes made by the clerk, but the rule appears to include those errors made by the parties. Reading the plain language of the statute, the emphasis is on the designation, not the party who made the error. Here, the Commonwealth properly designated, referenced, cited to, and quoted the Exhibit 17 disc and its contents. Simply, RAP 25(C) permits a party to request supplemental certification if the designated material is omitted by error. This interpretation of RAP 25(C) is consistent with RAP 25(D)(2).

RAP (D)(2) states "[i]f anything material to either party is omitted from the record on appeal by error or accident . . . , the appellate court, . . . of its own initiative, may direct that the omission . . . shall be corrected, and if necessary that a supplemental record shall be certified and transmitted by the clerk of the trial

---

[2] *Lucas* relied upon Kentucky Rules of Civil Procedure ("CR") 75.01 and 75.07, which have since been deleted and replaced by new rules of appellate procedure.

court." Here, the district court proceedings are *material* as they are *the source* of *the* issue on appeal and the rule, again, does not limit error to only those made by a clerk. The rule appears to encompass the errors made by the parties as well. As such, in July 2024, this Court issued a one-judge order for the Jefferson Circuit Court Clerk to supplement the record and to certify the district court proceedings (originally intended to be contained in Exhibit 17).

We permitted the Commonwealth to supplement the record because (a) it adequately designated those hearings before the circuit court and this Court; (b) those hearings are material to the matter on appeal; (c) all parties and the circuit court referenced and relied upon those hearings; (d) their omission was due to a technological error, not a legal error; and (e) inclusion of these video recordings is permissible within our Kentucky Rules of Appellate Procedure.

Moreover, our order directing the clerk to certify the district court proceedings is true to recent guidance from our Kentucky Supreme Court directing us to generally[3] shift from strict compliance with rules of appellate procedure, to a new policy of substantial compliance. *See M.A.B. v Cabinet for Health & Fam. Serv.*, 635 S.W.3d 90, 93-94 (Ky. 2021); *see also Cates v. Kroger*, 627 S.W.3d 864 (Ky. 2021).

---

[3] Some rules, such as the time limit on filing a notice of appeal, still require strict compliance. *Cabinet for Health & Fam. Services v. D.W.*, 680 S.W.3d 856, 860 (Ky. 2023).

-11-

Lastly, inclusion of these recordings is consistent with the principles of judicial notice. "A court may properly take judicial notice of public records and government documents, including public records and government documents available from reliable sources on the internet." *Polley v. Allen*, 132 S.W.3d 223, 225-26 (Ky. App. 2004); *see also* Kentucky Rule of Evidence ("KRE") 201. It stands to reason, if a court may take judicial notice of government documents from reliable internet sources, we should be permitted to take judicial notice of lower court hearings attained directly from a county clerk, when our appellate procedural rules permit those hearings to be supplemented *and* the party requesting those hearings substantially complied and designated those hearings. As such, the district court hearings are part of the record on appeal and the arguments referencing those hearings are sufficiently preserved for our adjudication.

**STANDARD OF REVIEW**

"[T]he issuance of a writ is inherently discretionary." *Commonwealth v. Shaw*, 600 S.W.3d 233, 237 (Ky. 2020) (quoting *Caldwell v. Chauvin*, 464 S.W.3d 139, 145-46 (Ky. 2015)). Writs of prohibition and/or mandamus are extraordinary remedies and courts "have always been cautious and conservative both in entertaining petitions for and in granting such relief." *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961). There are two general classes under which a court may grant relief by way of a writ: (1) where a court is acting outside its

jurisdiction and (2) where a court is acting erroneously within its jurisdiction.

*Shaw*, 600 S.W.3d at 237 (citation omitted). Pertinent here is the second classification.

When the petitioner alleges that the trial court is acting erroneously within its jurisdiction,

> a writ will only be granted when two threshold requirements are satisfied: there exists no adequate remedy by appeal or otherwise; and the petitioner will suffer great and irreparable harm. *Hoskins v. Maricle,* 150 S.W.3d 1, 18 (Ky. 2004). Under a narrow exception to the harm requirement, the "certain special cases" exception, the writ can be granted "in the absence of a showing of specific great and irreparable injury . . . provided a substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Bender*, 343 S.W.2d at 801.

*Commonwealth v. Peters*, 353 S.W.3d 592, 595 (Ky. 2011).

"[T]he proper standard [of review] actually depends on the class, or category, of writ case." *Shaw*, 600 S.W.3d at 237 (quoting *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803 (Ky. 2004)). For second class writs, we review the *legal conclusion* that there is no adequate remedy by appeal *de novo*; we review the *factual finding* of great and irreparable harm for *clear error*. *Id.* If there is no finding of irreparable harm and the appellants argue the matter is a "certain special case[]" exception, we review that exception *de novo*. *Id.* If these prerequisites –

remedy and harm/special case – are satisfied, we review the decision to grant or deny a writ petition for an abuse of discretion. *Id.*

## ANALYSIS

On appeal, the Commonwealth argues the circuit court abused its discretion in denying its petition because it met *all* the requirements for a second-class writ: no adequate remedy by appeal, great and irreparable harm, and the special case exception. Conversely, Farmer argues the circuit court properly denied the writ because the Commonwealth failed to establish *any* of the writ requirements. However, under these circumstances, there exists an adequate remedy by appeal or otherwise, and we limit our review to that dispositive issue.

On appeal, the Commonwealth argues the circuit court's rationale is improper because "there was no final order from which to take an appeal and there is no interlocutory appeal from district court to circuit court." More specifically, the Commonwealth asserts the district court's actions essentially blocked the Commonwealth's avenues for relief because: (a) the district court did not hold an involuntary hospitalization proceeding as required by statute, thereby not producing an appealable order; (b) even if the district court had conducted involuntary hospitalization proceedings, any resulting order would be separate from (and distinct to) the criminal action underlying the writ petition; and (c) an

-14-

appealable order of involuntary commitment – if the district court later entered one – would not automatically dismiss a case, as assumed by the circuit court.

While that argument has merit, a discussion of any error by the district court comes *after* the threshold requirements of remedy and harm are met. *See Cox v. Braden*, 266 S.W.3d 792, 796-97 (Ky. 2008) (citations omitted). Here, because there *does* exist a remedy by appeal or otherwise, we need not address any alleged error. Under these circumstances, instead of asking what the district court should or should not have done, we limit our review to whether the Commonwealth had an avenue for relief by appeal or otherwise. Simply, yes.

In the case *sub judice*, our emphasis is on the "or otherwise" language in the *Hoskins* rule. Writs inherently interfere with "the orderly . . . proceedings of a trial court[,]" which is part of why our Kentucky Supreme Court discourages their use. *See Hoskins*, 150 S.W.3d at 5-7. Writs should only be granted when a court determines such interference is *necessary*. *Id*. at 7-8. In fact, while the courts have broad discretion in granting a writ, such relief would not be appropriate "when any other adequate remedy for the threatened wrong existed[.]" *Id*. at 8 (quoting *Ohio River Contract Co. v. Gordon*, 186 S.W.178, 181 (Ky. 1916)); *see also Lawson v. Woeste*, 603 S.W.3d 266, 276 (Ky. 2020).

Here, subsequent proceedings in the case offer the Commonwealth remedy for relief, *i.e*., avenues for the Commonwealth to pursue Farmer's

-15-

competency and subsequently, possible further prosecution.  The district court

cases against Farmer remain open and in motion.  In fact, in February 2024 – after

the Commonwealth filed its initial appellant brief – the Commonwealth moved the

district court for another competency evaluation for Farmer related to newly

obtained criminal charges.[4]  Over Farmer's objection, the district court granted the

motion.  The district court ordered a new evaluation due, in part, to the fact that

Farmer's prior evaluation was more than one year old.  The district court had the

authority to do so, on the added charges and since the previous evaluation was

more than one year old.  *See* KRS 504.100(1) (allowing the court to order a

competency evaluation upon "reasonable grounds" during "any stage of the

proceedings"); *see also Slone v. Commonwealth*, 382 S.W.3d 851, 859 (Ky. 2012)

(citations omitted) (stating a court has discretion in finding "reasonable grounds,"

but once competency is at issue, an evaluation is mandatory).

The Commonwealth retains the authority to prosecute a defendant if

and when he does attain competency.  KRS 504.110(4) ("If the court finds the

defendant competent to stand trial, the court shall continue the proceedings against

the defendant."); *Keeling v. Commonwealth*, 381 S.W.3d 248, 257 (Ky. 2012)

---

[4] We take judicial notice of these district court proceedings as they were "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." KRE 201; *Polley*, 132 S.W.3d at 225-26 (permitting judicial notice of facts "not subject to reasonable dispute" including "public records and government documents").

(noting that after a finding of incompetency, relevant statutes "do[] not direct the court to dismiss the indictment").  The district court "retains broad discretion to revisit its interlocutory rulings at any time prior to the entry of a final judgment[.]"  CR 54.02;[5] *see Moore v. Commonwealth*, 357 S.W.3d 470, 496 (Ky. 2011) (citations omitted) (finding trial courts may revisit their interlocutory rulings, pursuant to CR 54.02, "when there is a *bona fide* reason for it").  As such, the Commonwealth has an adequate remedy for the threatened wrong – pursuing competency and possible subsequent prosecution – and it is not our role to interfere unnecessarily with the trial court's proceedings.  *See Hoskins*, 150 S.W.3d at 7-8.

We note, this finding is consistent and overlapping with our understanding of mootness.  Appellate courts must dismiss an appeal – for lack of subject matter jurisdiction – "when a change in circumstance renders that court unable to grant meaningful relief to either party."  *Commonwealth, Kentucky Bd. of Nursing v. Sullivan Univ. Sys., Inc.*, 433 S.W.3d 341, 344 (Ky. 2014) (citations omitted).  Here, in the February 2024 hearing, the district court noted that this writ appeal would not "impact anything either way at this point because he's going to have another evaluation."  We agree.  However, we will not *dismiss* the appeal (as opposed to affirming the circuit court's denial of the writ petition) because the

---

[5] This civil rule applies to criminal cases.  *Dillard v. Commonwealth*, 475 S.W.3d 594, 596 n.1 (Ky. 2015).

appeal is properly rooted in a writ action and the ultimate dispositional result aligns through either lens (mootness or writ).

## CONCLUSION

As there exists a remedy by appeal or otherwise, the Commonwealth did not meet its high burden for relief via a writ. Therefore, the Jefferson Circuit Court did not abuse its discretion by denying the petition for a writ of mandamus and prohibition. Accordingly, we AFFIRM the Jefferson Circuit Court order denying the Commonwealth's petition.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

Dorislee Gilbert
Special Assistant Attorney General
Louisville, Kentucky

BRIEF FOR APPELLEE EDWARD FARMER:

Christopher B. Thurman
Louisville, Kentucky