# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 28, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2020-SC-0506-MR

LOGAN COONS, A MINOR,
BY AND THROUGH JENNIFER COONS,
GUARDIAN OF THE ESTATE OF LOGAN
COONS, A MINOR

APPELLANTS

|  | ON APPEAL FROM COURT OF APPEALS |
|---|---|
| V. | NO. 2020-CA-0574 |
|  | JEFFERSON CIRCUIT COURT NO. 15-CI-006392 |

HONORABLE JUDITH MCDONALD-
BURKMAN, JUDGE, JEFFERSON CIRCUIT
COURT, DIV. NINE

APPELLEE

AND

NORTON HEALTHCARE, INC.;
NORTON HOSPITALS, INC.
D/B/A NORTON SUBURBAN HOSPITAL;
COMMUNITY MEDICAL ASSOCIATES, INC.
D/B/A ASSOCIATES IN OBSTETRICS &
GYNECOLOGY; WILLIAM L. KOONTZ, M.D.; AND
ASSOCIATES IN OBSTETRICS AND
GYNECOLOGY OF LOUISVILLE, PLLC

APPELLEES/
REAL PARTIES IN INTEREST

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Pending in the circuit court is this medical-negligence suit filed by

Jennifer Coons on behalf of the estate of her minor son, Logan Coons, against

Real Parties Norton Healthcare, Inc., and Norton Hospitals, Inc. (collectively,

"Norton Defendants" or "Norton"), for injuries Logan sustained during his delivery at birth. Norton argues it reached a binding settlement with Coons during pre-trial mediation. Other defendants, gynecology-department defendant-subsidiaries, namely Community Medical Associates, Inc. ("CMA"), and Associates in Obstetrics & Gynecology of Louisville, PLLC ("AOG"), moved to dismiss the claims against them under the purported agreement. The trial court ordered Coons to submit the agreement as memorialized in a signed document.

Reacting to the trial court's orders, Coons filed an original action in the Court of Appeals for a writ to prohibit the trial court from enforcing this settlement agreement, which Coons alleges to be unenforceable for a variety of reasons, primarily under statutory-guardianship provisions and contracts theories. The Court of Appeals declined to issue a writ, finding Coons to have an adequate remedy by appeal and circumstances that did not otherwise justify extraordinary relief by writ.

Coons now seeks this Court's review as a matter of right under Kentucky Rules of Civil Procedure (CR) 76.36 and 81. Coons maintains the Court of Appeals failed to recognize the deficiencies in the settlement agreement and argues failure to issue a writ results in serious and irreparable harm. We affirm the Court of Appeals' decision to decline the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying suit is a medical-negligence suit filed by Jennifer Coons, on behalf of the estate of her minor son, Logan Coons, who suffered irreversible

2

and debilitating physical and mental injuries during his delivery at birth in October 2011. As next friend and the guardian of Logan's estate, Jennifer alleges the defendants' negligence caused these injuries.

After filing and amending the claims against the defendants, Coons engaged Norton in pre-trial mediation for settlement. Coons allegedly settled Logan's claims for a confidential sum of money, signing a document titled "Settlement Agreement," dated December 18, 2019.

As the Court of Appeals indicated, the mediation agreement provides that defense counsel is to "prepare the Settlement Agreement with terms and conditions as noted below," that Coons was "to obtain court approval of settlement," and that "[t]here are no other material terms and conditions." The agreement specifically and expressly excluded the release of any claims Logan might have against Dr. Koontz or AOG. The "Mediator's Report" provides: "[T]he plaintiffs' claims as against North [sic] Hospital, Inc., were resolved. All claims as it relates [sic] to William Koontz, MD, were not settled and shall remain on the active docket of the Court. An Agreed Order of Partial Dismissal will be submitted."

Over a month following the mediation, Coons attempted to repudiate as "null and void" the settlement document for several asserted reasons, including (1) that Jennifer lacked the authority contractually to settle claims on Logan's behalf under KRS 387.125, even as his next friend and guardian in the litigation, absent approval by the circuit court per KRS 387.125(6); (2) that Jennifer could repudiate the agreement at any time before court approval, and

3

that she was so repudiating the agreement in light of Norton's purported breach of the terms of confidentiality, allegedly by sharing the settlement terms with William Koontz, M.D., and AOG; (3) that two new material terms were added to the agreement without Jennifer's knowledge or understanding; and (4) that the agreement could not be approved because the terms were not in Logan's best interests. As to assertion (3), Jennifer asserts two terms were added to the agreement, namely that the agreement released Jennifer's potential claims against Norton, although she intended only to release Logan's claims, and that the agreement released Norton's insurers, although there was no intention to do so.

Norton moved the trial court to enforce the agreement and to dismiss the claims against it. Following an in-camera hearing on February 24, 2020, the trial court granted that motion, ordering Coons to submit the settlement agreement on Logan's behalf for approval within 30 days. The trial court denied the motion to reconsider on March 12, 2020, granting Coons an additional 30 days to comply with the original submission order.

Coons then applied for a writ in the Court of Appeals to block the trial court's enforcement of the settlement agreement. The Court of Appeals declined to issue a writ, finding Coons has an adequate remedy on appeal.

4

## II. STANDARD OF REVIEW

The issuance of a writ is an extraordinary remedy disfavored under Kentucky law.[1]  Further, "the issuance of a writ is inherently discretionary. Even if the requirements are met and error found, the grant of a writ remains within the sole discretion of the Court."[2]  Our reluctance to entertain writ applications, much less grant them, is clear from our precedent,[3] and this reluctance is due to the potential for writs of prohibition or mandamus to upset the normal progression of trial and appeal.[4]  In all but the most exceptional cases, the party seeking a writ must demonstrate the lack of adequate remedy by appeal or otherwise *and* great injustice and irreparable injury will result if the writ is not issued.[5]  Even in special cases where correction of an error is necessary to prevent a serious miscarriage of justice and to maintain orderly judicial administration,[6] the lack of an appellate remedy remains a strict and absolute prerequisite.[7]  In the context of a writ of this second class, "no

---

[1] *Caldwell v. Chauvin*, 464 S.W.3d 139, 144 (citing *Ridgeway Nursing & Rehab. Facility, LLC v. Lane*, 415 S.W.3d 635, 639 (Ky. 2013)).

[2] *Commonwealth v. Shaw*, 600 S.W.3d 233, 237 (Ky. 2020) (citing *Caldwell*, 464 S.W.3d at 145–46) (internal quotations omitted). *See also Graham v. Mills,* 694 S.W.2d 698, 699–700 (Ky. 1985).

[3] *Caldwell*, 464 S.W.3d at 144–45 (citing *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky. 1961)).

[4] *See Cox v. Braden*, 266 S.W.3d 792, 795 (Ky. 2008).

[5] *See id.*

[6] *See Bender*, 343 S.W.2d at 801.

[7] *See Indep. Ord. of Foresters v. Chauvin*, 175 S.W.3d 610, 617 (Ky. 2005); *Gilbert v. McDonald-Burkman,* 320 S.W.3d 79, 85 (Ky. 2010).

adequate remedy by appeal" means that the alleged injury cannot be rectified in any sort of subsequent proceedings in the case.[8]

### III.  ANALYSIS

The trial court's jurisdiction over this case is undisputed.  Coons asserts an entitlement under the second class of writs, and more specifically under the special-cases subcategory.  So Coons must demonstrate a lack of appellate remedy and severe and irreparable harm or that an error otherwise portends a miscarriage of justice or a disruption of orderly judicial administration.[9]  The Court of Appeals properly analyzed Coons's petition and correctly concluded that Coons qualifies for neither type of writ because she has an adequate remedy by appeal.

Coons asserts that if she is forced to submit the settlement agreement for trial court approval, irreparable injury will result with no recourse by appeal because a binding settlement would result in dismissal of some claims against those defendants against whom she may still have claims.  In other words, the potential claims against several defendants would be severely and irreversibly precluded and appeal estopped were Coons to assent to the terms of the trial court's order enforcing the agreement.  Coons maintains that she did not and does not truly assent to the terms of settlement, or, alternately, that she lacked the authority to assent at all.  Distilled to its essence, Coons's position is that

---

[8] *Newell Enters., Inc. v. Bowling,* 158 S.W.3d 750, 754 (Ky. 2005), *overruled on other grounds by Interactive Media Entm't and Gaming Ass'n, Inc. v. Wingate,* 320 S.W.3d 692 (Ky. 2010).

[9] *Gilbert,* 320 S.W.3d at 83.

6

the trial court's order to submit the agreement for approval presents her with a Hobson's choice: either "(1) obey the order and thereby waive [her] right to appeal the existence of a settlement agreement or (2) disobey the order and face the imposition of sanctions or an order of contempt."

To support this claim, Coons cites a single case out of the Missouri Court of Appeals, *State ex rel. American Bouvier Des Flanders Club, Inc. v. Jamison.*[10] *Jamison* presents circumstances similar to the case at bar, yet it is distinguishable. Similar to the facts in the present case, the parties in *Jamison* engaged in a private mediation.[11] Following mediation, one side filed a motion with exhibits to enforce a settlement purportedly reached in mediation, to which the other side filed an opposing motion with exhibits asserting settlement had not been reached.[12] The trial court heard oral arguments and granted the movant's request to enforce the settlement.[13] The nonmovant asked the trial court to reconsider, a request which was denied.[14] The nonmovant then sought a writ, which the Missouri Court of Appeals issued.[15]

Aside from the fact that the Missouri decision is not binding on this Court, it is otherwise readily distinguishable from the present case. In *Jamison,* the trial court signed an order entitled "Judgment," requiring the

---

[10] 413 S.W.3d 359 (Mo. App. 2013).

[11] *Id.* at 360.

[12] *Id.* at 360–61.

[13] *Id.* at 361.

[14] *Id.*

[15] *Id.* at 362.

parties to *execute*, i.e., to *sign*, a final settlement agreement within thirty days, and designated that order as a final appealable order.[16]  Here, we have before us a signed document that purports to be a "Settlement Agreement," vouched for by the mediator, with Jennifer's signature on it.  The trial court has not, as the trial court did in *Jamison*, forced Jennifer to enter into a settlement agreement or otherwise to face contempt.  The trial court here has ordered Jennifer to submit what would appear to be an existing document containing the settlement terms.  If defenses exist affecting enforcement of the agreement, Jennifer had the opportunity to raise them to the trial court in opposition to the motion to enforce.  If the trial court errs in enforcing an unenforceable settlement agreement, any dismissal premised on such an agreement can be appealed.

The Court of Appeals cited several cases that were both applicable and informative, contrary to Jennifer's contention that they were inapt.  *Jones ex rel. Jones v. Cowan* demonstrates that even if the trial court ends up enforcing a settlement agreement in violation of the rights and procedure of statutory guardianship provisions, that error can be determined and remedied by appeal.[17]  *Parkview Healthcare, LLC v. Combs* demonstrates that if Jennifer believes the Agreement may have been breached, that breach can also theoretically be remedied in a separate action for breach of contract.[18]  And in

---

[16] *Id.* at 361.

[17] 729 S.W.2d 188, 190 (Ky. App. 1987).

[18] No. 2010-SC-000335-MR, 2010 WL 4683529, at *4 (Ky. Nov. 18, 2010).

*Anderson v. Bates*, a trial judge set aside a partial settlement agreement based on a finding that one party gave false information in a deposition, and then set a date for trial.[19] This Court affirmed the Court of Appeals' denial of a writ to enforce the settlement and thereby avoid trial in that case, finding that an interlocutory order pertaining to a settlement agreement is appealable following final judgment and that the cost and delay of trial was not so severe as to warrant the extraordinary remedy of a writ of prohibition.[20]

The principles in these three cases clearly apply. Contrary to the dissent's position, compliance with the trial court's order to produce the settlement agreement for approval would not prevent Coons from appealing the trial court's order with which she complied. "Waiver is commonly defined as a voluntary and intentional surrender or relinquishment of a known right[,]"[21] and therefore does not apply to these circumstances. It would be inequitable to hold that Coons's coerced compliance with the trial court's order would waive her right to appeal that order. We find, in this specific case, Jennifer's motions for reconsideration of the trial court's order to submit the agreement and this writ petition itself preserved the issues raised for appeal. If Jennifer is correct that some fatal defect lurks in the terms or formation of the settlement agreement, whether under principles of guardianship per KRS 387.125(6) or under principles of contract, and that such defects form an improper basis for

---

[19] No. 2003-SC-0085-MR, 2003 WL 22161582, at *1 (Ky. Sept. 18, 2003).

[20] *Id.* at *2.

[21] *Greathouse v. Shreve*, 891 S.W.2d 387, 390 (Ky. 1995) (quoting *Barker v. Stearns Coal & Lumber Co.*, 163 S.W.2d 466, 470 (Ky. 1942)).

9

the trial court's prospective dismissal, any such dismissal can face appellate review. Because these issues can be appealed, no writ may issue. We decline to pass on the validity or enforceability of the apparent settlement agreement, or on the application of KRS 387.125(6). Additionally, a potentially erroneous disposal of Jennifer's claims does not present so dire and irreparable a harm as to warrant a writ. While this result may pose some costs and delay, having to appeal a dismissal or to proceed to trial is not so exceptional or extraordinary a situation as to warrant a special-case writ of prohibition.

## IV. CONCLUSION

We affirm the decision of the Court of Appeals to decline issuance of a writ.

All sitting. Minton, C.J.; Hughes, Keller, Nickell, and VanMeter, JJ., concur. Lambert, J., dissents by separate opinion, in which Conley, J., joins.

LAMBERT, J., DISSENTING: Respectfully, I must dissent. Today we release two cases where litigants mediated their civil disputes privately and, in each case, a party later asserted that the final documents failed to accurately reflect their agreement.[22]

Ms. Coons, the mother of Logan Coons, acting as the court-appointed guardian for Logan, her severely brain injured child, entered into a mediation with the hospital where her child was born and signed a post-mediation written agreement listing various terms. The parties agreed that counsel for the

---

[22] *Adamson v. Adamson,* No. 2020-SC-000175-DG (Ky. Oct. 28, 2021).

10

Appellees (Norton Defendants) would draft a final agreement reflecting the mediated agreement. Having subsequently discovered an issue with the terms of the agreement, Ms. Coons repudiated it. By the trial court's order, Ms. Coons is now presented with a court-forced choice, which is really no choice at all. She can either: 1) face contempt of court if she opts to refuse to submit to the court a motion to approve a mediated agreement that she has long since repudiated; or 2) submit a motion to approve the settlement agreement, in which she must falsely assert that she believes that the settlement is in the best interest of her minor child, thereafter sign a release, and again affirm the terms she finds contrary to her child's best interest.

While the Court of Appeals panel and the majority here today have held that Ms. Coons and Logan have a right to appeal this topsy-turvy, double-bind of an involuntary "agreement," I know of no clear path to do so under our current rules of procedure. How can Ms. Coons both sign the release of the Norton Defendants, then appeal by disputing the validity of that release? Would the majority have Ms. Coons present the settlement agreement and falsely aver that it is in the best interest of her child? If she is truthful to the court, may the court unilaterally approve such an agreement? Having thoroughly contemplated her options, I see no viable path forward once she submits the agreement to the Jefferson Circuit Court. Effectively, Ms. Coons and Logan are denied their constitutional right of appeal and the protection of the guardianship statute.

Denial of the writ leaves Ms. Coons and Logan in a legal quagmire and without remedy. The right of appeal found by the Court of Appeals and majority is more illusory than real. This imaginary right to appeal is not adequate to protect the interests of Ms. Coons or Logan under the circumstances. I do not share the majority's reluctance to grant the writ for fear of "upsetting the normal progression of trial and appeal." Justice demands that we quiet that fear, and prevent the irreparable harm bound to happen in the case at bar if we deny it. Of course, "the specter of injustice always hovers over writ proceedings, which explains why courts of this Commonwealth are— and should be—loath to grant the extraordinary writs unless absolutely necessary."[23] In the instant case, the "specter of injustice" looms ***larger*** over Ms. Coons and Logan, and granting the writ is, in no uncertain terms, "absolutely necessary."[24]

**A. The characteristics of settlement of a minor's claims are unique.**

The relationship between guardian and ward imparts unique duties upon the guardian, who must act in the ward's best interests in protecting the ward's estate. Guardians have an immense amount of responsibility in overseeing the financial, emotional, and physical wellbeing of their wards. This Court discussed these responsibilities in the context of a guardian seeking to dissolve a ward's marriage in *Brooks by Elderserve, Inc. v. Hagerty*, stating:

> [a] guardian's specific duties include seeing to the
> ward's financial well-being, providing for the ward's

---

[23] *Cox v. Braden*, 266 S.W.3d 792, 795 (Ky. 2008).

[24] *Id.*

12

care, comfort, and maintenance, and consenting to necessary medical care. [...] In a full guardianship, where the guardian is also serving as the conservator, he or she is responsible for ensuring the protection and preservation of the ward's estate and prosecuting or defending actions and claims in any jurisdiction for the protection of the estate's assets.[25]

The Commonwealth's current statutory scheme regarding guardians, thus, imputes a duty of the greatest of care upon guardians when acting on behalf of their ward. Therefore, the guardian must first act in the best interest of her ward, and the actions of the guardian are entitled to deference unless it is determined that she is acting against her ward's best interest by substantial evidence.[26] Ms. Coons, following her reasoned judgment, the advice of counsel, and with the care of a mother closely guarding the interests of her minor and disabled child, has attempted to fulfill those duties assigned to her as Logan's

---

[25] 614 S.W.3d 903, 913 (Ky. 2021) (internal citations and quotations marks omitted).

[26] *See, e.g.*, KRS 387.032 ("The District Court shall appoint any person or entity whose appointment would be in the **best interest** of the minor . . . .") (emphasis added); KRS 387.090(1)(b) (providing for removal of guardian if deemed in the minor's "**best interest**" by the District Court) (emphasis added); *Branham v. Stewart*, 307 S.W.3d 94, 101 (Ky. 2010) (discussing the legislature enacting a comprehensive scheme "concerning appointing guardians to further the '**best interest**' of minors . . ." (citing KRS 387.032; KRS 387.090(1)(b))) (emphasis added); *Riehle v. Riehle*, 504 S.W.3d 7, 10 (Ky. 2016) (Wright, J., concurring) ("The guardian must carefully weight [(sic.)] [their ward's] personal dignity and the unique nature of the dispute in making the **best interests** determination. Disabled persons are still, first and foremost, persons. They deserve the same basic human dignity and respect the rest of us enjoy.") (emphasis added); *Brooks by Elderserve, Inc.*, 614 S.W.3d at 914 ("[A] guardian may seek permission from the district court overseeing the guardianship to initiate a dissolution of marriage action on behalf of his or her ward. The district court shall hold a hearing to determine if such an action is in the ward's **best interest** and if so satisfied may authorize the guardian to file such an action with the family court consistent with its authority and responsibility under KRS 387.670(3).") (emphasis added).

13

statutory guardian by repudiating an agreement materially altered after it was reached but before it was approved by the court.

## B. A writ is Ms. Coons' only option for remedy of the trial court's error.

The heart of the issue in the instant case is whether a guardian has the authority to repudiate a contract before it is approved by the court. If she does have that authority and exercises it, and the trial court requires her to enter a settlement agreement that dismisses the suit despite that exercise of authority, she is compelled to engage in a catch-22-style paradox, wherein she must submit a settlement agreement for approval that she had already repudiated, and then appeal as error that which she requested the trial court do by her submission. A predicate issue is, therefore, whether a contract not approved by a court is binding and enforceable. If not binding and enforceable, then Ms. Coons is free to repudiate.

**1. The settlement agreement is voidable by the guardian until it is approved by the court, therefore, it was error for the court to prematurely bind Ms. Coons to it.**

In 1987, the Court of Appeals considered *Jones ex rel. Jones v. Cowan*, and held that, when a next friend objects to a settlement agreement entered into on behalf of a minor child, the trial court may not enter it over the next friends' objection.[27] The *Jones* Court reasoned that, because the next friend was merely a nominal party, he did not have the same unilateral statutory or other authority to settle the minor's claim as would a statutory guardian under

---

[27] 729 S.W.2d 188, 189 (Ky. App. 1987).

14

KRS 387.130.[28]  Thus, *Jones* stands for the proposition that, when a next friend does not have the ability to enter into a settlement agreement without the approval of the court, and the next friend repudiates the agreement ***before*** receiving the approval of the Court, then the court cannot subsequently approve the settlement agreement in spite of the repudiation.

Of course, the statutory scheme concerning guardianship has changed dramatically since *Jones* was decided.  At that time, a settlement agreement entered into by a statutory guardian was not subject to the approval of the court according to KRS 387.180, unless it concerned debt or real property.  KRS 387.130 stated in relevant part that a guardian

> [s]hall also receive and sue for the debts and demands owing to the ward, defend actions against him, and **with leave of court**, may compound **debt** or demand, or settle or compromise any controversy concerning the **lands** of his ward when the interest of the ward will be subserved thereby.[29]

That statute was repealed in 1990—just three years after *Jones* was decided.  In its place, the Kentucky Legislature adopted KRS 387.125, which has effectively abrogated the *Jones* holding in regard to the statutory authority of guardians.  Indeed, to that extent, *Jones* is contrary to the explicit strictures of KRS 387.125(6), which states in pertinent part: "***[s]ubject to the approval of the court*** in which the action, claim, or proceeding has been filed, a guardian

---

[28] *Id.* at 189–90 (quoting *Ambrose v. Graziani*, 247 S.W. 953, 954 (1923)).

[29] Emphasis added.

15

may settle or compromise the action, claim, or proceeding on behalf of the ward."

Under the now controlling statutory scheme, Ms. Coons is a guardian and Logan is her minor ward as defined by KRS 387.010, *et seq.* Whether settled prior to a formal complaint for damages is filed or after, KRS 387.125(6) requires that any settlement for claims be approved by the court.[30] This creates a statutory condition precedent to the effectuation of a mediation contract that the guardian enters into on behalf of her ward.

Further, KRS 387.125(6) does not grant standing to anyone else to seek approval of such a claim. Here, a party with opposing financial interests to the minor (i.e. the Norton Defendants) has sought to require the guardian to seek approval of the settlement agreement, which the guardian now believes is contrary to the child's interest. In essence, this makes Ms. Coons no more than a straw-man in the process, and disempowers her to make decisions on behalf of Logan. By ignoring this fact, we have fallen down the rabbit hole and circumvented the protective purposes of KRS 387.125(6). Instead, I would have this Court hold that a settlement agreement involving a minor party is voidable at the election of a minor ward through their guardian unless and until it has been presented by the guardian and approved by the trial court as required by KRS 387.125(6). When the guardian determines that the settlement agreement

---

[30] KRS 387.125(6) states in relevant part: "***Subject to the approval of the court*** in which the action, claim, or proceeding has been filed, a guardian may settle or compromise the action, claim, or proceeding on behalf of the ward." (Emphasis added).

16

is not in the best interest of her ward, no other party has standing to proceed under the statute. Such a holding would be consistent with the purpose of the statute.

In the instant case, secondary concerns developed post-mediation as to whether the settlement agreement was in Logan's best interest. Of course, a plain reading of the terms of the mediation agreement and the purported settlement agreement offered by the Norton Defendants had varying, material terms. These varying terms created potential for future dismissal of the other non-settling parties as an unintended consequence of the mediation agreement and that is why she repudiated it and did not seek court approval of it. In fact, Dr. Koontz has already asserted that he is entitled to dismissal based on the release of the Hospital, alerting Ms. Coons of the issue. Courts must defer to the guardian's initial determination in assessing the merit of whether a settlement agreement is in the best interest of her ward, and should only disregard that determination if it is shown by substantial evidence that her repudiation is, in fact, not in the best interests of her ward.

In effect, the settlement agreement tendered by the Norton Defendants forces Ms. Coons to release them and their insurers from liability as to her own potential claims as well as Logan's. The mediation agreement contained no such terms. Had the Norton Defendants wished for these varying, material terms to be binding, then they should have negotiated them during mediation and included them in that agreement. They undertook no such negotiation during mediation, and no agreement was made regarding those terms after

17

mediation, as evidenced by the subsequent communications between the parties. As a result, Ms. Coons repudiated the mediation agreement, which, as discussed above, was within her statutory right and which was for the protection of her ward's interests.

The foregoing discussion reflects, simply put, that there could be no settlement until Ms. Coons submitted it for approval by the court and the court approved it. It was error for the court, therefore, to find that an enforceable contract had been reached before it had approved it. The question remains, however, whether Ms. Coons would have any alternative and adequate remedy by appeal in light of this error.

**2. There is no adequate remedy by appeal and great injustice and irreparable injury will result by denial of the writ.**

Adopting the majority's approach to the issues at bar results in manifest injustice, whereby neither Ms. Coons nor Logan have an adequate remedy on appeal.

The majority and the Court of Appeals both found that Ms. Coons has an available alternative and adequate remedy by looking to previous cases wherein this Court considered the issuance of writs. I take issue with their reading of each, namely because the procedural complications of the case at bar simply were not present in each case upon which they rely.

18

The Court of Appeals' misreading of *Spot-A-Pot v. State Resources Corp.*[31] plague both this case and the *Adamson* case rendered today.[32]

In the case at bar, the Court of Appeals asserted that *Spot-A-Pot* shows that Ms. Coons does, in fact, have an adequate remedy on appeal. In *Spot-A-Pot*, State Resources Corp. (SRC) had filed a complaint against Spot–A–Pot and Shelly Massa (Massa) alleging that Spot–A–Pot had defaulted on loans.[33] Spot–A–Pot filed a third-party complaint against U.S. Bank.[34] Mediation resulted in a bullet point list labeled "partial settlement" between Spot-A-Pot, Massa, and SRC, but the dispute between Spot–A–Pot, Massa, and U.S. Bank was not resolved in part or whole. [35] The remaining terms of a settlement between Spot-A-Pot, Massa, and SRC were disputed and negotiations occurred.[36] Dueling motions to enforce the settlement agreement were filed by Spot-A-Pot and SRC.[37] Spot-A-Pot sought to have the bullet point list enforced, and SRC sought to have additional terms enforced as established through correspondence between the parties' counsel concerning the terms of the settlement and affidavits submitted by Steven Brehm, SRC's counsel, and Eric

---

[31] 278 S.W.3d 158 (Ky. App. 2009).

[32] No. 2020-SC-000175-DG (Ky. Oct. 28, 2021).

[33] *Spot-A-Pot*, 278 S.W.3d at 159 (Ky. App. 2009).

[34] *Id.*

[35] *Id.* at 160.

[36] *Id.*

[37] *Id.*

19

Jensen, U.S. Bank's counsel.[38] The trial court enforced SRC's proposed

agreement over the protestations of Spot-A-Pot.[39]

This situation is obviously inapplicable in the present case. Here, by

asking the trial court to enter the settlement agreement, as she is statutorily

required to do under KRS 387.125(6), Ms. Coons would effectively be

consenting to it. I do not see how Ms. Coons would be procedurally allowed to,

on the one hand, submit the purported settlement agreement to the trial court,

while on the other, argue on appeal that the order entering the settlement

agreement she offered was erroneous. This scenario, which will be the result of

a denial of a writ, causes her to declare to the trial court (against her obviously

sincere belief) that the settlement agreement is in the best interest of her ward,

and then disaffirm that same settlement agreement on appeal. Such a

contrived argument would preclude meaningful appellate review, and result in

manifest injustice.

The other cases cited by the Court of Appeals and the majority suffer

from the same defect.

In *Jones v. Cowan*, discussed *supra*, the next of friend father (Mr. Jones)

did not submit the settlement agreement to the trial court.[40] The settlement

agreement was entered over his objection.[41] As a result, Mr. Jones did not

---

[38] *Id.*

[39] *Id.* at 160–61.

[40] 729 S.W.2d at 189.

[41] *Id.* at 188.

20

have to affirm it to the trial court and then turn around and disaffirm it to the Court of Appeals, as Ms. Coons would have to do with the majority's denial of her writ.

In *Parkview Healthcare, LLC v. Combs*, there was a purported settlement agreement which Parkview Healthcare sought to enforce.[42]  The trial court refused to enforce it.[43]  Parkview unsuccessfully argued that the cost to litigate warranted the issuance of a writ.[44]  The *Parkview* Court determined that Parkview Healthcare had available an adequate, alternative remedy to the issuance of a writ: suing for breach of contract.[45]  In the present case, Ms. Coons does not believe that there was an enforceable agreement, because it had not been approved by the trial court.  She merely argues in the alternative that, if enforceable, it had been breached or repudiated.  It is nonsensical to believe that Ms. Coons would be entitled to seek damages for a breach of contract upon a contract that, without action of the court, she contends does not exist.  Of course, the inverse is true: if the Norton Defendants believe that a settlement was in fact reached, and the contract was binding, then they may seek remedy post judgment by filing a breach of contract claim.  The roles of the parties and the remedies available to them in *Parkview* are opposite to the

---

[42] No. 2010-SC-000335-MR, 2010 WL 4683529, at *4 (Ky. Nov. 18, 2010).

[43] *Id.* at *1.

[44] *Id.* at *4.

[45] *Id.*

21

roles and remedies of the parties in this case. For those reasons, therefore, *Parkview* is neither instructive or applicable.

*Anderson v. Bates*[46] suffers the same defect as *Spot-A*-Pot, *Jones*, and *Parkview.* In that case, the trial court refused to enforce a settlement agreement and no writ was issued.[47] The *Anderson* Court determined that the interlocutory order invalidating a proposed settlement agreement was appealable once final judgment was rendered.[48] However, Anderson—the party objecting to the trial court's interlocutory order—was not required by statute to acquiesce to the trial court's denial of a proposed settlement, and then turn around and argue that the denial he agreed to was erroneous on appeal. Instead, Anderson could maintain his objection to the order and then re-raise the issue on appeal.[49] Ms. Coons would have no such opportunity.

The majority states that Ms. Coons has preserved her right to appeal via her motions for reconsideration and the filing of a petition for a writ. Frankly, it confounds me how the majority can find that motions to reconsider and the petition for a writ that are, on remand, followed by Ms. Coons submitting the settlement agreement to the trial court do not constitute waiver. I am aware of no procedural rule that would permit Ms. Coons to offer a settlement agreement to the trial court, the terms of which she protests and never agreed

---

[46] No. 2003-SC-0085-MR, 2003 WL 22161582, at *1 (Ky. Sept. 18, 2003).

[47] *Id.* at *2.

[48] *Id.*

[49] *Id.* at *1.

to, ask the trial court to enter it, and then argue to a higher court that the trial court erred by doing what she asked of it.[50] The doctrine of waiver or doctrine of estoppel by acquiescence would likely preclude such an argument.

Therefore, Ms. Coons faces, contrary to the majority's opinion, an impossible dilemma: comply with the order, lose her right to appeal, and potentially have the suit against all alleged tortfeasors dismissed; or refuse to comply with the order and face contempt. If this represents no great injustice and irreparable injury, I am hard pressed to see what could be.

With the foregoing in mind, the result of the denial of Ms. Coons' writ is clear: she and Logan will have no adequate remedy on appeal, and manifest injustice will result. KRS 387.125(6) requires all settlement agreements be approved by the court ***after*** the guardian who believes it to be in the best interest of her ward presents it. The current statutory scheme, which requires the guardian to initially act on behalf of the ward and then seek court approval, creates a statutory condition precedent to the finalization of any such settlement. Until approved by the court, any such settlement is neither binding nor enforceable. The trial court's order requiring her to submit the settlement agreement, presumably so the court will stamp it "approved," is, on

---

[50] *Deaton v. Fifth Third Union Tr. Co.*, 65 S.W.2d 979, 980 (1933) (holding "[a]ny act or conduct upon the part of such litigant by which he impliedly acquiesces in, ratifies, or recognizes the validity of the judgment may operate as a waiver of a right to ask reversal on appeal.").

its face, erroneous. Because I would grant the writ and prohibit the trial court from enforcing its order, I dissent.

Conley, J., joins.


COUNSEL FOR APPELLANT:

Paul A. Casi, II
Jeff W. Adamson
Paul A. Casi, II, PSC


APPELLEE:

Honorable Judith McDonald-Burkman
Judge, Jefferson Circuit Court


COUNSEL FOR APPELLEES/REAL PARTIES IN INTEREST:

Beth H. McMasters
Amy L. Cooper
McMasters Keith Butler, Inc.

Donald Kenneth Brown, Jr.
Michael Brian Dailey
Rachel Ann Stratton
O'Bryan, Brown & Toner PLLC